**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISON**

| | | |
|---|---|---|
| JUDY ALIFERIS and | ) | |
| BRIAN GAUGHAN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 15-cv-3489 |
| | ) | The Honorable Judge Edmond E. |
| GENERATIONS HEALTH CARE NETWORK | ) | Chang |
| AT OAKTON PAVILLION, LLC | ) | |
| and GENERATIONS HEALTH CARE NETWORK | ) | |
| AT OAKTON ARMS, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW**
**AGAINST PLAINTIFF GAUGHAN**

Defendant, Generations Health Care Network at Oakton Arms, LLC ("Oakton Arms" or "Defendant"), by and through its attorneys at Gordon & Rees, LLP, respectfully moves this Honorable Court for an Order granting its Fed. R. Civ. P. 50(a) Motion for Judgment as a Matter of Law against Plaintiff Brian Gaughan and in favor of Defendant on Gaughan's claim for disability discrimination due to association pursuant to the Americans with Disabilities Act, and on Gaughan's claim for damages. In support of its motion, Defendant states as follows:

**FACTUAL BACKGROUND**

**I.     STATEMENT OF THE CASE**

Oakton Arms is an independent senior living facility located in Des Plaines, Illinois. Co-Defendant Generations Healthcare Network at Oakton Pavillion, LLC ("Oakton Pavillion") is the neighboring sister-property that provides skilled nursing care. Oakton Arms and Oakton Pavillion purchased the respective businesses and buildings and began operations on September

1, 2014. Plaintiff Brian Gaughan ("Plaintiff" or "Gaughan") worked for Defendant as a receptionist at Oakton Arms from September 1, 2014 until his termination on September 12, 2014. The Administrator of both facilities was and is Mr. Bart Barrish. Mr. Barrish was Mr. Gaughan's supervisor as of September 1, 2014. The reason for Mr. Gaughan's termination was that he left his post at the desk of Oakton Arms on September 11, 2014 without notifying his supervisor.

Mr. Gaughan has filed a Complaint alleging that Defendant Oakton Arms violated the Americans with Disabilities Act (ADA) by terminating him based on his protected association with a person with a disability: co-Plaintiff Judy Aliferis ("Aliferis").

Judgment as a matter of law should be granted for several reasons. First, Mr. Gaughan has failed to present sufficient evidence that would allow a reasonable jury to find that his "association" with Ms. Aliferis had anything to do with Mr. Barrish's decision. Second, Mr. Gaughan has failed to present sufficient evidence that his association (A) caused Defendants expense; (B) distracted Plaintiff; or (C) placed Plaintiff at risk of developing or contracting breast cancer. In the alternative, Gaughan has failed to present sufficient evidence such that a reasonable jury would find that he was terminated because of his association with Ms. Aliferis. Finally, Defendant asks this Court to deny Plaintiff's claim for damages, including punitive damages.

II.     **SUMMARY OF EVIDENCE PRESENTED BY GAUGHAN DURING TRIAL[1]**

Plaintiff Brian Gaughan ("Plaintiff" or "Gaughan") worked for Defendant as a receptionist from September 1, 2014 until her termination on September 12, 2014. Co-Plaintiff

---

[1] This motion is being filed at the conclusion of Gaughan's evidence and necessarily is a summary of the evidence presented. Specific references to testimony and exhibits can be supplemented and amended later for record purposes.

Judy Aliferis, an employee of co-Defendant Oakton Pavillion, was diagnosed with breast cancer in March, 2014, and had been seeking treatment for the same.

During his employment with the "old" business from March through September, 2014, Mr. Gaughan would accompany Ms. Aliferis to her doctor's appointments, and would request time off in advance. Ms. Aliferis had a doctor's appointment on September 11, 2014, and Mr. Gaughan previously submitted a request for absence form, which was approved by his previous supervisor, Ms. Maureen Krahl. Ms. Krahl remained an employee following the purchase of the business by Oakton Arms and Oakton Pavillion until her termination, which occurred prior to both Plaintiffs' terminations.

On September 11, 2014, before her morning doctor's appointment, Ms. Aliferis was terminated. She then contacted Mr. Gaughan, who left his post to take her to her doctor's appointment. Mr. Gaughan did not tell anyone that he was leaving his post.

Bart Barrish was informed of Mr. Gaughan's absence on September 11, 2014 and made the decision to terminate Mr. Gaughan's employment that day. At the time he made the decision, Mr. Barrish did not know that Ms. Krahl had approved the absence (and Ms. Krahl was no longer employed at the facilities). Upon learning of Mr. Gaughan's absence, Mr. Barrish reviewed the schedule for that day, the employee handbook and searched Mr. Gaughan's personnel file. He did not find any authorization or permission for Mr. Gaughan to have been absent.

On September 12, 2014, Mr. Barrish informed Mr. Gaughan that he was terminated for having abandoned his job, which constituted a violation of Oakton's safety policy. When informed of the termination, Mr. Gaughan proceeded to shout at Bart Barrish and threaten him. This rendered him unfit for rehire.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 50 provides that, once a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may grant a motion for judgment as a matter of law against the party. Fed. R. Civ. P. 50(a). Such a motion may be made at any time before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2).

The standard governing a Rule 50 motion "mirrors that employed in evaluating a summary judgment motion, except that the two motions are made at different times during the proceedings before the district court." *Stanfield v. Dart*, 2014 U.S. Dist. LEXIS 32875, *25 (N.D. Ill. Mar. 13, 2014), *citing Winters v. Fru-Con Inc*., 498 F.3d 734, 746 (7th Cir. 2007). On a motion for judgment as a matter of law under Fed. R. Civ. P. 50, a court must determine whether the evidence presented at trial, when viewed in the light most favorable to the non-moving party, is sufficient to support the verdict. *Smith v. Farmstand*, 2016 U.S. Dist. LEXIS 140460, *5 (N.D. Ill. Oct. 11, 2016), *citing Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000). The test is whether "no rational juror could have found for the prevailing party." *Id., citing Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002).

## IV. JUDGMENT IN DEFENDANT'S FAVOR IS APPROPRIATE ON GAUGHAN'S CLAIM UNDER THE ADA

### A. Gaughan Has Failed to Prove that He Was Terminated Because of Expense, Distraction or Disability by Association.

To prove his claim for associational disability discrimination under the ADA, Mr. Gaughan must establish and prove that (1) he was qualified for the job at the time of the adverse employment action; (2) he was subjected to an adverse employment action; (3) he was known by his employer at the time to have a relative or associate with a disability; and (4) his case falls into

one of the three relevant categories of expense, distraction or association. *Magnus v. St. Mark Methodist Church*, 688 F.3d 331, 336-37 (7th Cir. 2012); *see also Ciesielski v. JP Morgan Chase & Co.*, 2016 U.S. Dist. LEXIS 80549, *16 (N.D. Ill. June 21, 2016) ("The Seventh Circuit has outlined three categories into which 'association discrimination' claims fall: expense, disability by association, and distraction.").

Mr. Gaughan has failed to present sufficient evidence to prove the aforementioned elements and based on the evidence that he has set forth, it is clear that judgment as a matter of law in Defendant's favor is not only appropriate, but warranted.

In the expense category of associational claims under the ADA, a common situation arises where the disabled individual "may be covered by the employee's health plan and therefore costly to the employer." *Segura v. TLC Learning Ctr.*, 2013 U.S. Dist. LEXIS 43151, *9 (N.D. Ill. Mar. 26, 2013); *see Larimer v. IBM Corp.,* 370 F.3d 698, 700 (7th Cir. 2004) (noting an example where an employee is fired because "his spouse has a disability that is costly to the employer because the spouse is covered by the company's health plan."). At trial, Mr. Gaughan presented absolutely no evidence to demonstrate what, if any, expense, it would or did cost Defendant to provide for Ms. Aliferis' disability. In other words, Mr. Gaughan has introduced no evidence to the jury such that a reasonable juror would find that after terminating Ms. Aliferis, Defendant continued to suffer costs due *Aliferis'* medical expenses or cancer, thus prompting Defendant to terminate *Gaughan*.

The second potential category is likewise devoid of support. In the "distraction" category, an employee is fired because he is a bit inattentive on the job due to his associate's disability that requires his attention, but not so inattentive that he needs an accommodation to perform to her employer's satisfaction. *Magnus*, 688 F.3d at 336, *citing Larimer*, 370 F.3d at

700. Rather than set forth any evidence to show that Defendant believed he was distracted due to Ms. Aliferis' cancer, the evidence presented by Mr. Gaughan unequivocally shows that he was not inattentive on the job and did not have any work-related performance issues; Mr. Gaughan even showed up on time and performed his duties on the day after Ms. Aliferis was terminated. Based on Mr. Gaughan's evidence, he has not, and cannot, as a matter of law, demonstrate that his case falls within the distraction category.

Finally, and quite obviously, Mr. Gaughan has not demonstrated, nor has he ever made allegations, that his case is one of "disability by association." This final category has two components. The first involves disabilities that are communicable, such as HIV, where an employee's companion is infected with HIV and the employer fears that the employee may also have become infected. *Larimer*, 370 F.3d at 700. The second type deals with a likelihood of contraction, such as where an employee's blood relatives have a disabling genetic ailment and the employee is likely to develop the disability as well. *Id.* Nevertheless, absent such evidence, a plaintiff cannot bring a "disability by association" claim. *Id.* at 701 (ruling out this category "peremptorily" as the plaintiffs' daughters' premature birth and resulting medical afflictions "are neither communicable to Larimer nor predictive of his becoming ill or disabled."). As there is no evidence at trial that Mr. Gaughan could contract or develop breast cancer because of his relationship with Ms. Aliferis, Mr. Gaughan, as a matter of law, does not have a plausible cause of action under this category.

Mr. Gaughan's evidence simply does not allow for a reasonable jury to find that his employment was terminated because of his association with Aliferis. Mr. Gaughan's evidence simply is that he asked for and received permission from Maureen Krahl to be off on September 11, 2014 by authoring a request form. But Mr. Gaughan and Ms. Krahl agree that the request

form – to their knowledge – never got to Bart Barrish. When, on September 11, 2014, Mr. Gaughan was absent, Mr. Barrish made the decision to terminate Gaughan's employment.

It is at this instant that the legal analysis of Mr. Gaughan's evidence must pause. This is because the *decision* to terminate is what matters for Mr. Gaughan's claim and nothing else. *See, e.g., Herrera v. Ill. Bell Tel. Co.,* 2013 U.S. Dist. LEXIS 23406, *59 (N.D. Ill. Feb. 21, 2013) (granting defendant's motion for summary judgment as plaintiff failed to establish that the decision to terminate her employment was pretext for discrimination); *Magnus*, *supra* (noting that, in an associational-disability discrimination claim, plaintiff must establish that he was subjected to an adverse employment action).

Given the unanimity of Mr. Gaughan's, Ms. Krahl's and Mr. Barrish's testimony that Barrish had no knowledge that Mr. Gaughan had requested time off, the evidence provided, viewed in favor of Mr. Gaughan, demonstrates that there was a breakdown in the communication chain when Bart Barrish did not receive the request for time off. In other words, the best evidence that Mr. Gaughan has produced is that a mistake was made. But mistakes are not equivalent to associational discrimination. *See Aliferis v. Generations Health Care Network at Oakton Pavillion*, *LLC*, 2016 U.S. Dist. LEXIS 127054, *23 (N.D. Ill. Sept. 19, 2016) ("To be sure, employers are only on the hook for discriminatory practices, not mere mistakes."); *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 338 (7th Cir. 2012) ("Further, it matters not that McCoy's evaluation may have been wrong, what matters is whether he honestly believed that Magnus's performance was deficient."); *Ciesielski v. JP Morgan Chase & Co*., 2016 U.S. Dist. LEXIS 80549, *20 (N.D. Ill. June 21, 2016) ("[T]he Court disagrees that it should side-step the Seventh Circuit's clearly laid out modification to the *McDonnell Douglas* test simply because the Seventh Circuit has struggled to develop it."). It follows that a reasonable jury would be

unable to conclude, based on the evidence presented by Mr. Gaughan, that he was the victim of associational discrimination based on the above-referenced categories.

The particularities of an ADA "associational" claim require judgment as a matter of law. Mr. Gaughan has failed to establish that his termination was <u>due to his association with</u> Judy Aliferis, as there is no evidence to demonstrate that the association (A) caused Defendants expense; (B) distracted Plaintiff; or (C) placed Plaintiff at risk of developing or contracting breast cancer. These particular requirements of ADA associational claims are legal necessities and need to be proven by Mr. Gaughan individually and without reference to any claims made by Ms. Aliferis. Put another way, even if Ms. Aliferis has presented sufficient evidence to allow a jury to determine her claims, Gaughan's failure to show that his association with Aliferis (A) caused Defendant expense; (B) distracted Plaintiff; or (C) placed Plaintiff at risk of developing or contracting breast cancer warrants judgment as a matter of law here.

### B. *Gaughan has Failed to Prove that Defendant Discriminated against Him Based on His Association with Aliferis*

In the alternative, and in light of this Court's Order denying Defendant's Motion for Summary Judgment, Defendant also asserts that, based on the evidence presented at trial, Mr. Gaughan has failed to demonstrate that, based on the totality of the evidence, a reasonable juror could conclude that Ms. Aliferis' disability was a "determining factor" in Defendant's decision to terminate him.

Even if this Court finds that Mr. Gaughan established his prima facie case of associational disability discrimination, he has still failed to demonstrate that Defendant's proffered reason was pretextual. If a plaintiff establishes a prima facie case, his employer has the opportunity to present legitimate, non-discriminatory reasons for his termination. *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *see Magnus*, 688 F.3d at 338

(noting an employer's legitimate, non-discriminatory reasons for termination in a disability discrimination case).

Upon learning of Mr. Gaughan's absence, Bart Barrish looked at the schedule to determine who was scheduled to work the front desk at the Arms. Seeing that Brian Gaughan was marked for a 7am to 3pm shift, Mr. Barrish reviewed Mr. Gaughan's personnel file and found no authorization permitting him to be absent. Mr. Barrish then reviewed the employee handbook to determine the consequence for an employee who leaves the premises without authorization and saw that such an act results in immediate termination. Tt that moment, Mr. Barrish decided to terminate Mr. Gaughan's employment. This is undoubtedly a legitimate and non-discriminatory reason for Mr. Gaughan's termination *See, e.g., Wagenknecht v. Village Motors, LLC*, 2006 U.S. Dist. LEXIS 8275, *32 (N.D. Ill. Mar. 2, 2006) (granting defendant's motion for summary judgment because "defendant has, however, presented evidence of a legitimate, non-discriminatory reason for firing Wagenknecht: job abandonment. Plaintiff has no evidence that this reason is pretextual."). The evidence at trial showed that Mr. Gaughan's association with Ms. Aliferis had no bearing on Mr. Barrish's decision. As such, Defendant is entitled to judgment as a matter of law on Mr. Gaughan's ADA associational-disability discrimination claim.

## V. DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF DAMAGES

As Defendant is entitled to judgment as a matter of law on Mr. Gaughan's ADA claim, Defendant is also entitled to judgment as a matter of law on Mr. Gaughan's claim for damages. *See, e.g., El-Bakly v. Autozone, Inc.*, 2009 U.S. Dist. LEXIS 1638, *42 (N.D. Ill. Jan. 9, 2009) (holding that "because the Court grants AutoZone's motion for judgment as a matter of law as to the jury's verdict as to any liability by AutoZone on such a claim, the Court necessarily must

overturn the punitive damages award."). Plaintiff did not prove his disability discrimination claims, and the evidence does not support any amount of compensatory damages.

There is no basis for a reasonable jury to find the heightened standard for punitive damages has been satisfied as a mater of law. The punitive damages jury instruction in this case, modeled directly on Seventh Circuit Pattern Instruction 3.13, states that punitive damages should be assessed if the jury finds by a preponderance of the evidence that Defendants acted in reckless disregard of Plaintiff's rights. At a minimum, this Court should enter judgment for Defendant on Plaintiff Gaughan's claim for punitive damages.

This is, at the very worst, a case of mistake. Defendant's decision to terminate Gaughan does not come anywhere close to the sort of outrageous misconduct and reckless disregard warranting punitive sanctions. Even if the record supported a finding that Defendant was negligent in terminating Gaughan (and as shown above, it does not), the record cannot possibly support a finding that Defendant *intended* to harm Plaintiff, or acted with a reckless disregard of Gaughan's federally protected rights.

At trial, Mr. Gaughan argued that Bart Barrish terminated him because he knew that Gaughan would have to keep taking time off to take Aliferis to her doctor's appointments. But no such evidence, beyond Mr. Gaughan's singular accusation, was ever presented. Rather, the evidence presented demonstrates that Defendant terminated Mr. Gaughan in good faith for violating a crucial company policy. Upon informing Mr. Gaughan of his termination, Mr. Gaughan raised his voice and made threats against Bart Barrish, rendering Mr. Gaughan unfit for rehire. This is simply not a case for punitive damages.

The record is clear that Defendant did not act with a reckless indifference to Gaughan's protected rights. Plaintiff simply failed to adduce evidence of Defendant's (or Bart Barrish's)

reckless disregard of Plaintiff's constitutional rights.  Even if Mr. Gaughan had met his burden in

demonstrating that Defendant's conduct violated the ADA (which he did not), Defendant could

avoid liability by showing that it engaged in good faith efforts to implement and enforce an anti-

discrimination   policy.     The   Northern   District   of   Illinois   has   recognized   that   to

award punitive damages, the jury *must* find that defendant did not make a good faith effort to

implement an anti-discrimination policy[2], and that a managerial employee recklessly disregarded

plaintiffs' rights.  *Irish v. Jewel Food Stores, Inc.*, 2012 U.S. Dist. LEXIS 23525, *2, 2012 WL

619555 (N.D. Ill. Feb. 23, 2012) (emphasis added); *see also Koerber v. Journey's End, Inc.*, 2004

U.S. Dist. LEXIS 5424, *32-33 (N.D. Ill. Mar. 31, 2004) ("If a plaintiff meets these burdens, the

employer can still avoid liability for punitive damages. The employer *must* show that "it engaged

in  good  faith  efforts  to  implement  an  antidiscrimination  [sic]  policy.")  (emphasis  added);

*Washington v. DeYoung*, 2004 U.S. Dist LEXIS 14620, *19 (N.D. Ill. Jul. 28, 2004) ("Good faith

efforts, by an employer, such as the existence of policies against discrimination and the posting

of such policies, shield an employer from punitive damages claims.").  It is undisputed that

Defendant  possessed,  implemented,  enforced  and  followed  a  policy  designed  to  prevent

discrimination.  These policies had been in place under the old ownership and continued to stay

in place after the purchase.  Further, Mr. Barrish, the sole decisionmaker in Mr. Gaughan's

termination, testified that he had reviewed the employment policies and understood and was

aware Oakton Pavillion had an EEO policy, as well as a policy regarding the Americans with

Disabilities Act.  In fact, he unequivocally testified that he knew it was unlawful to terminate

someone because of that person's association or relationship to someone with a disability and

that he did *not* terminate Mr. Gaughan because of his association with Ms. Aliferis.  There is thus

---

[2] This is further reflected in the Court Set 2 Jury Instruction on Punitive Damages.  (Dkt. No. 155-1)

no reckless disregard.  Based on the undisputed facts and the law of the Seventh Circuit, there is

no legally sufficient evidence on which to base an award of punitive damages.

## **CONCLUSION**

WHEREFORE, Defendant Generations Health Care Network at Oakton Arms, LLC

respectfully requests this Honorable Court enter an Order granting judgment as a matter of law in

its favor and against Plaintiff Brian Gaughan on all claims, including damages, pursuant to Rule

50 of the Federal Rules of Civil Procedure, and award all further relief that this Court deems just.

Date: April 20, 2017

Respectfully submitted,

**GENERATIONS      HEALTH      CARE NETWORK AT OAKTON ARMS, LLC**


/s/ Patrick F. Moran
Patrick F. Moran

Patrick F. Moran (#6279297)
Goli Rahimi (#6317753)
GORDON & REES LLP
One North Franklin, Suite 800
Chicago, Illinois 60606
Tel:  (312) 565-1400
Fax:  (312) 565-6511
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2017, I electronically filed the foregoing Motion for Judgment as a Matter of Law with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record, and serve a copy of the foregoing document via electronic mail in accordance with Local Rule 5.9 to:

***Attorney for Plaintiffs***
Miriam N. Geraghty
Jeffrey L. Taren
Kinoy, Taren & Geraghty, P.C.
224 S. Michigan Ave.
Suite 490
Chicago, IL 60604
mgeraghty@ktglawyer.com
jtaren@ktglawyer.com

Respectfully submitted,

By:  /s/Patrick F. Moran
    Patrick F. Moran (#6279297)
    Goli Rahimi (#6317753)
    Gordon & Rees, LLP
    1 North Franklin
    Suite 800
    Chicago, IL 60606
    Ph:  (312) 565-1400
    Fax:  (312) 565-6511